**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| OMNI MEDSCI, INC., *Plaintiff,* v. APPLE INC., *Defendant.* | No. 7:26-cv-226 JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Omni MedSci, Inc. ("Omni MedSci" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendant Apple Inc. ("Apple" or "Defendant") for infringement of United States Patent Nos. 12,268,475 ("the '475 Patent"), 12,484,787 ("the '787 Patent"), 12,193,790 ("the '790 Patent"), 11,564,577 ("the '577 Patent"), 11,896,346 ("the '346 Patent"), 11,678,805 ("the '805 Patent"), and 12,251,194 ("the '194 Patent") (collectively, "Asserted Patents") (copies of the Asserted Patents are attached as Exhibits A–G, respectively), and alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil action for infringement of the Asserted Patents arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, to obtain damages and injunctive relief resulting from Defendant's unauthorized actions of making, having made, using, selling, having sold, offering to sell, importing, or having imported into the United States products that infringe or enable the infringement of one or more claims of the Asserted Patents.

## THE PARTIES

2.      Plaintiff Omni MedSci, Inc. ("Omni MedSci" or "Plaintiff") is a corporation organized and existing under the laws of the state of Michigan with a place of business at 1718 Newport Creek Drive, Ann Arbor, Michigan 48103.

3.      Defendant Apple Inc. ("Apple" or "Defendant") is a California corporation, having regular and established places of business at 6900 W Parmer Ln, Austin, TX 78729; 12545 Riata Vista Cir, Austin, TX 78727; and One Apple Park Way, Cupertino, California 95014.

4.      Apple is registered to do business in the State of Texas. Apple maintains multiple Apple retail stores in Texas, including locations at Cielo Vista Mall, 8401 Gateway Boulevard West, El Paso, TX 79925; North Star Mall, 7400 San Pedro Avenue, San Antonio, TX 78216; and The Shops at La Cantera, 15900 La Cantera Parkway, San Antonio, TX 78256.

5.      Apple may be served with process through its registered agent for service of process in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6.      Upon information and belief, Apple employs full-term personnel, such as sales personnel and engineers, in this District.

7.      Apple designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports smartwatches, earbuds, smartphones, and tablets configured to measure physiological parameters and/or perform optical measurements, including products accused of infringement in this Complaint, into and within the United States, including into and within this Judicial District. In addition, Apple has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products accused of infringement in this Complaint.

8.      Apple controls and operates cloud computing platforms, including iCloud, through which it provides cloud computing services involving receiving data signals over wireless

transmission links from smartwatches, smartphones, and tablets located in the United States, processing received data, and storing data within the United States.

## JURISDICTION AND VENUE

9.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 8 above.

10.    Jurisdiction and venue for this action are proper in this Judicial District.

11.    This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.    This Court has specific and general personal jurisdiction over Apple consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. This Court has personal jurisdiction over Apple at least because, through Apple's own acts and/or through the acts of others acting as its agent, representative, or alter ego, Apple (i) has a presence or regular and established places of business in the State of Texas and this Judicial District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) has done and is doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including its one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintains continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) places products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

13.    For example, Apple has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Apple has derived substantial revenues from its infringing acts occurring within the State of Texas and this Judicial District.

14.    Apple has established sufficient minimum contacts with the State of Texas and this Judicial District such that it should reasonably and fairly anticipate being brought into court in the State of Texas, including this Judicial District, without offending traditional notions of fair play and substantial justice; and Apple has purposefully directed activities at residents of the State of Texas, including this Judicial District. Moreover, the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. On information and belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Texas, including this Judicial District.

15.    Venue is proper in this Judicial District as to Apple under 28 U.S.C. § 1400(b). Venue is proper as to Apple under 28 U.S.C. § 1400(b) because Apple has offered to sell or sold products accused of infringement to actual or potential customers located in this District and has a regular and established place of business in this District.

## BACKGROUND

### Dr. Mohammed Islam and Omni MedSci, Inc.

16.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 15 above.

17.    Dr. Islam received his B.S. degree in 1981, a M.S. degree in 1983, and a Sc.D. degree in 1985, all in electrical engineering, from the Massachusetts Institute of Technology in Cambridge, Massachusetts.

18.    Early in his career, Dr. Islam was a member of the Technical Staff in the Advanced Photonics Department at AT&T Bell Laboratories in Holmdel, N.J.

19.    Dr. Islam joined the Electrical and Computer Engineering department at the University of Michigan in Ann Arbor in 1992, where he remains today as a Full Tenured Professor of Optics and Photonics.

20.    Dr. Islam is also a Professor of Biomedical Engineering, a joint department in both the College of Engineering and the Medical School, at the University of Michigan.  He was previously a faculty member with the University of Michigan Medical School's Department of Internal Medicine.

21.    From 1981 to 1985, Dr. Islam was a Fannie and John Hertz Fellow.  In 1992, Dr. Islam was awarded the OSA Adolf Lomb Medal for pioneering contributions to nonlinear optical phenomena and all-optical switching in optical fibers.  He also received the University of Michigan research excellence award in 1997.  In 1998, Dr. Islam became a Fellow of the Optical Society of America and received the Texas eComm Ten Award for being one of the 10 most influential people in Texas's digital economy in 2002.  Dr. Islam became a fellow of the IEEE in 2004 and was the first recipient of the prestigious 2007 Distinguished University Innovator Award.

22.    Dr. Islam has published over 135 papers in refereed journals, authored three books, written several book chapters, and has been an invited speaker at over 80 conferences and symposia on issues related to his research.  He is also the named inventor on over 200 U.S. patents, including the Asserted Patents.

23.    With an entrepreneurial spirit, Dr. Islam founded Omni MedSci in 2010 to help people by commercializing his optical technology innovations with healthcare and medicine applications.

24. In 2015, Omni MedSci received the Eureka Award for being the #1 most Innovative Company in Michigan.

25. By 2012, Dr. Islam had invented technology for using light sources and other components in wearable measurement devices that are capable of detecting and monitoring physiological parameters for use in various applications, including the medical and healthcare fields.

26. On December 31, 2012, Omni MedSci filed a set of patent applications covering its developments using light sources for medical and other applications.

27. The Asserted Patents result from extensive research and development by Dr. Mohammed Islam on behalf of Omni MedSci.

## THE ASSERTED PATENTS

### U.S. Patent No. 12,268,475

28. On April 8, 2025, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,268,475 ("the '475 Patent"), entitled "Wearable Device for Differential Measurement on Pulse Rate and Blood Flow." A copy of the '475 Patent is attached hereto as Exhibit A.

29. Plaintiff is the assignee of all rights, title, and interest in and to the '475 Patent and, at a minimum, of all substantial rights in the '475 Patent, and possesses all rights of recovery, whether legal or equitable, under the '475 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

30. Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '475 Patent.

31. Plaintiff and any of its predecessors-in-interest have not licensed the '475 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '475 Patent.

32. Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '475 Patent.

33. The '475 Patent is valid and enforceable.

34. The '475 Patent is related through a chain of continuation applications to U.S. Patent Nos. 12,193,790, 11,896,346, and 11,564,577, and discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive monitoring of physiological parameters.

35. The asserted claims of the '475 Patent are directed to an apparatus (e.g., wearable device configured to be worn by a user) that comprises at least the following physical components: one or more biosensors adapted to be placed on the user; a light source comprising a plurality of light emitting diodes configured to generate an output optical light having one or more optical wavelengths; one or more lenses configured to receive at least a portion of the output optical light and to deliver a lens output light to tissue comprising skin; a detection system configured to receive at least a portion of the lens output light reflected from the tissue and to generate an output signal having a signal-to-noise ratio, wherein the detection system is configured to be synchronized to the light source, comprises a plurality of detectors that are spatially separated from each other, and at least one analog to digital converter is coupled to at least one of the plurality of detectors; and a processor. The output signal is indicative of one or more physiological parameters that comprise a pulse rate monitoring and a blood flow measurement. *See* '475 Patent, claims 2–4 and 9–10. Thus,

the asserted claims of the '475 Patent are each directed to a physical system or device and are not directed to an abstract idea.

36. The asserted claims of the '475 Patent further recite the capability of increasing the signal-to-noise ratio of an output signal associated with a physiological parameter of the user by increasing light intensity of at least one of the plurality of light emitting diodes from an initial light intensity, and by comparing a first signal generated responsive to light received while the light emitting diodes are off to a second signal generated responsive to light received while at least one of the light emitting diodes is on. *Id*. The apparatus is also configured to determine, based at least in part on the output signal, that the apparatus is being worn by the user. *Id*. These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with a blood constituent or a blood flow of a user.

37. Certain of the asserted claims of the '475 Patent include additional elements that provide further beneficial enhancements, such as the tissue further comprising blood vessels and the one or more physiological parameters being related to hypertension, with the blood flow measurement affected by a temporal lag between different parts of the user (*see* claim 2), the differential measurement comprising a comparison of at least two separate spatial locations on the user (*see* claim 3), the physiological parameters configured to change in response to stretching of a hand, movement of a finger, or movement of a thumb of the user, with the apparatus further configured to combine the output signal with data from at least some other biosensors (*see* claim 4, 9–10), and a wearable device with a processor generating a third output signal using at least a portion of the first and second output signals that has a greater signal-to-noise ratio than either,

with the processor determining that the wearable device is being worn by the user (*see* claims 9–10).

38. Thus, the asserted claims of the '475 Patent are directed to specific improvements to wearable devices for non-invasive monitoring of physiological parameters, including parameters associated with a blood constituent or blood flow of a user, through differential measurement techniques. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '475 Patent.

### U.S. Patent No. 12,484,787

39. On December 2, 2025, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,484,787 ("the '787 Patent"), entitled "Measurements Using Camera Imaging Tissue Comprising Skin or the Hand." A copy of the '787 Patent is attached hereto as Exhibit B.

40. Plaintiff is the assignee of all rights, title, and interest in and to the '787 Patent and, at a minimum, of all substantial rights in the '787 Patent, and possesses all rights of recovery, whether legal or equitable, under the '787 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

41. Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '787 Patent.

42. Plaintiff and any of its predecessors-in-interest have not licensed the '787 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '787 Patent.

43.     Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '787 Patent.

44.     The '787 Patent is valid and enforceable.

45.     The '787 Patent is related through a chain of continuation applications to U.S. Patent Nos. 12,251,194 and 11,678,805 and discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive measurement of physiological parameters.

46.     The asserted claims of the '787 Patent comprise at least the following physical components of a physiological measurement device: a housing configured to be physically applied to a user; a light source physically incorporated into the housing and configured to emit light; a plurality of detectors physically incorporated into the housing, including a first detector and a second detector each configured to detect light; and a processor coupled to the housing. The processor is configured to generate reflected light signals associated with light reflected from tissue of the user that was emitted from the light source within different bands of wavelengths associated with different colors and received by the first and second detectors. The processor is further configured to generate an ambient light signal associated with ambient light received by at least one of the plurality of detectors while the light source is not emitting light. *See* '787 Patent, claim 1. Thus, the asserted claims of the '787 Patent are each directed to a physical system or device and are not directed to an abstract idea.

47.     The asserted claims of the '787 Patent further recite the capability of increasing the signal-to-noise ratio by performing an analysis of the first reflected light signal, the fourth reflected light signal, and the ambient light signal, wherein the performed analysis further includes an

analysis of one or both of the second reflected light signal and the third reflected light signal. *Id*. Based at least in part on the performed analysis, a processed output signal is generated having a signal-to-noise ratio that is greater than a signal-to-noise ratio of the first reflected light signal, the processed output signal being associated with a physiological parameter of the user. *Id*. These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with a user.

48.    Certain of the asserted claims of the '787 Patent include additional elements that provide further beneficial enhancements, such as the plurality of detectors being physically incorporated into the housing such that the first detector is positioned at a first fixed distance from the light source and the second detector is positioned at a second fixed distance from the light source, the first fixed distance being shorter than the second fixed distance (*see* claim 2); the device further comprising a third detector configured to detect ambient light, physically incorporated into a second opposing side of the housing positioned to face a direction generally opposite the first detector, with the processor further configured to generate a second ambient light signal associated with ambient light received by the third detector (*see* claim 3); the processor further configured to adjust a graphical display of a display device of the physiological measurement device using the second ambient light signal (claim 4); and the device further comprising replaceable elements coupled to the housing and configured to be physically applied to the user (*see* claim 5).

49.    Thus, the asserted claims of the '787 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-

based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '787 Patent.

**U.S. Patent No. 12,193,790**

50.     On January 14, 2025, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,193,790 ("the '790 Patent"), entitled "Wearable Devices Comprising Semiconductor Diode Light Sources With Improved Signal-to-Noise Ratio." A copy of the '790 Patent is attached as Exhibit C.

51.     Plaintiff is the assignee of all rights, title, and interest in and to the '790 Patent and possesses all rights of recovery, whether legal or equitable, under the '790 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

52.     Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '790 Patent.

53.     Plaintiff and any of its predecessors-in-interest have not licensed the '790 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '790 Patent.

54.     Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '790 Patent.

55.     The '790 Patent is valid and enforceable.

56.     The '790 Patent is related through a chain of continuation applications to U.S. Pat. Nos. 11,896,346 and 11,564,577 and discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive physiological parameters.

57.     The asserted claims of the '790 Patent comprise at least the following physical components of an optical system: a wearable device adapted to be placed on a wrist or a hand dorsal of a user; a light source comprising a plurality of light emitting diodes configured to generate an output optical light having one or more optical wavelengths; one or more lenses configured to receive at least a portion of the output optical light and to deliver a lens output light to tissue comprising skin; a detection system configured to receive at least a portion of the lens output light reflected from the tissue and to generate an output signal having a signal-to-noise ratio, wherein the detection system is configured to be synchronized to the light source, comprises a plurality of detectors that are spatially separated from each other, and at least one analog to digital converter is coupled to at least one of the plurality of detectors; wherein the output signal is indicative of one or more physiological parameters that change in response to stretching of the hand or movement of fingers or thumb of the user. *See* '790 Patent, claim 1. Thus, the asserted claims of the '790 Patent are each directed to a physical system and are not directed to an abstract idea.

58.     The asserted claims of the '790 Patent further recite the capability of increasing the signal-to-noise ratio by increasing light intensity of at least one of the plurality of light emitting diodes from an initial light intensity, and by comparing a first signal generated responsive to light received while the light emitting diodes are off to a second signal generated responsive to light received while at least one of the light emitting diodes is on. *Id*. Additionally, the wearable device is at least in part configured to identify an object. *Id*. These elements provide for the unique and unconventional combination of physical component configuration and application of optical signal processing techniques to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with a user.

13

59.    Certain of the asserted claims of the '790 Patent include additional elements that provide further beneficial enhancements, such as the plurality of light emitting diodes comprising six light emitting diodes with the detectors arranged along an arc (*see* claim 2), the optical system configured to use artificial intelligence in making decisions associated with the output signal (*see* claim 3), combining the output signal with data from other non-invasive devices or biosensors (*see* claim 4), communicating with a smart phone or a tablet comprising a wireless receiver, wireless transmitter, display, speaker, voice input module, and touch screen (*see* claim 5), and the wearable device further coupled to an imaging system for remote sensing of the user comprising a laser diode with one or more Bragg reflectors configured to be pulsed and to generate near-infrared laser light, a beam splitter, a second plurality of detectors, and the imaging system configured to measure time-of-flight based at least in part on the sample detector output (*see* claim 6).

60.    Thus, the asserted claim of the '790 Patent is directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '790 Patent.

## U.S. Patent No. 11,564,577

61.    On January 31, 2023, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 11,564,577 ("the '577 Patent"), entitled "Wearable Device Coupled to Time-of-Flight Imaging System." A copy of the '577 Patent is attached hereto as Exhibit D.

62.    Plaintiff is the assignee of all rights, title, and interest in and to the '577 Patent and, at a minimum, of all substantial rights in the '577 Patent, and possesses all rights of recovery,

whether legal or equitable, under the '577 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

63.     Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '577 Patent.

64.     Plaintiff and any of its predecessors-in-interest have not licensed the '577 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '577 Patent.

65.     Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '577 Patent.

66.     The '577 Patent is valid and enforceable.

67.     The asserted claims of the '577 Patent comprise at least the following physical components of an optical system: a wearable device adapted to be placed on a wrist or an ear of a user with LEDs, lenses, and a synchronized detection system with spatially separated detectors and an analog to digital converter generating an output signal indicative of physiological parameters; and an imaging system comprising a pulsed laser diode with Bragg reflectors generating near-infrared light (700–2500 nm) directed to the user, a second plurality of detectors receiving reflected laser light, and configured to perform a time-of-flight measurement. *See* '577 Patent, claim 7. Thus, the asserted claims of the '577 Patent are each directed to a physical system and are not directed to an abstract idea.

68.     The asserted claims of the '577 Patent further recite the capability of increasing the signal-to-noise ratio by increasing the light intensity of at least one of the plurality of light emitting diodes from an initial light intensity, and by the detection system generating a first signal

15

responsive to light received while the light emitting diodes are off, generating a second signal responsive to light received while at least one of the light emitting diodes is on, and increasing the signal-to-noise ratio by comparing the first signal and the second signal. *Id*. These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with a user.

69.     Certain of the asserted claims of the '577 Patent include additional elements that provide further beneficial enhancements, such as such as detectors with optical filters (*see* claim 8); a beam splitter splitting light into sample and reference arms for time-of-flight measurement based on the sample detector output (*see* claim 9); a smart phone or tablet configured to use artificial intelligence for pattern identification, classification, or regression signal processing (*see* claim 10); six light emitting diodes with detectors located on one or more arcs (*see* claim 11); three optical wavelengths between 600 nm and 1000 nm to measure oxy-hemoglobin and deoxy-hemoglobin, with one wavelength's output signal used to improve measurement using the other two (*see* claim 12); and the wearable device configured to identify an object (*see* claim 13).

70.     Thus, the asserted claims of the '577 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters, including the integration of wearable measurement devices with time-of-flight imaging systems for remote sensing. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '577 Patent.

**U.S. Patent No. 11,896,346**

71.    On February 13, 2024, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 11,896,346 ("the '346 Patent"), entitled "Short-Wave Infrared Sensor for Identifying Based on Water Content." A copy of the '346 Patent is attached hereto as Exhibit E.

72.    Plaintiff is the assignee of all rights, title, and interest in and to the '346 Patent and, at a minimum, of all substantial rights in the '346 Patent, and possesses all rights of recovery, whether legal or equitable, under the '346 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

73.    Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '346 Patent.

74.    Plaintiff and any of its predecessors-in-interest have not licensed the '346 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '346 Patent.

75.    Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '346 Patent.

76.    The '346 Patent is valid and enforceable.

77.    The '346 Patent is related through a chain of continuation applications to U.S. Pat. No. 11,564,577 and discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive measurement of physiological parameters.

78.    The asserted claims of the '346 Patent comprise at least the following physical components of an optical system: a wearable device adapted to be placed on a wrist or an ear of a

17

user; a light source comprising a plurality of light emitting diodes configured to generate an output optical light; one or more lenses configured to deliver a lens output light to tissue; a detection system comprising a plurality of spatially separated detectors and an analog to digital converter, configured to be synchronized to the light source and to receive at least a portion of the lens output light reflected from the tissue and to generate an output signal indicative of one or more physiological parameters; and a sensor system coupled to the wearable device for optically detecting the user, the sensor system comprising an active illuminator with a plurality of semiconductor diodes operating at wavelengths with lower and higher water absorption, one or more wavelength selective optical filters, a housing coupled to an electrical circuit and a processor, and a detection apparatus with one or more photo-detectors synchronized to the active illuminator. *See*, e.g., '346 Patent, claim 1. Thus, the asserted claims of the '346 Patent are each directed to a physical system and are not directed to an abstract idea.

79. The asserted claims of the '346 Patent further recite the capability of increasing the signal-to-noise ratio by increasing light intensity of at least one of the plurality of light emitting diodes from an initial light intensity, and by comparing a first signal generated responsive to light received while the light emitting diodes are off to a second signal generated responsive to light received while at least one of the light emitting diodes is on. *Id.* Additionally, the sensor system including the processor is configured to identify the user based on water absorption within the user by generating and comparing output diode signals related to reflected light at different wavelengths. *Id*. These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters and identification of users.

18

80.    Certain of the asserted claims of the '346 Patent include additional elements that provide further beneficial enhancements, such as a detector wavelength selective optical filter comprising one or more dielectric filters placed between the user and the detection apparatus (*see* claim 2), the first wavelength being near 1090 nanometers and the second wavelength being near 1440 nanometers (*see* claim 3), at least a part of the diode output configured to be delivered to skin, tissue or teeth of the user with the processor configured to compare the output value to a threshold (*see* claim 4), and the semiconductor diodes comprising modulated light-emitting diodes with photo-detectors comprising indium gallium arsenide semiconductor material (*see* claim 5). The independent claim 6 recites an optical system for identifying an object based on water absorption using modulated semiconductor sources at wavelengths near 1090 nanometers and 1440 nanometers, with wavelength selective optical filters, a housing coupled to an electrical circuit and a processor, and a detection system synchronized to the light source, with claims 7–11 reciting further enhancements such as dielectric filters, InGaAs detectors, coupling to a wearable device, coupling to a smart phone or tablet, and coupling to a remote sensing system with laser diodes comprising Bragg reflectors for time-of-flight measurement (*see* claims 6–11).

81.    Thus, the asserted claims of the '346 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters and identification of objects based on water absorption. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '346 Patent.

**U.S. Patent No. 11,678,805**

82.     On June 20, 2023, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 11,678,805 ("the '805 Patent"), entitled "Active Remote Sensing System Using Time-of-Flight Sensor Combined with Cameras and Wearable Devices." A copy of the '805 Patent is attached hereto as Exhibit F.

83.     Plaintiff is the assignee of all rights, title, and interest in and to the '805 Patent and, at a minimum, of all substantial rights in the '805 Patent, and possesses all rights of recovery, whether legal or equitable, under the '805 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

84.     Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '805 Patent.

85.     Plaintiff and any of its predecessors-in-interest have not licensed the '805 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '805 Patent.

86.     Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '805 Patent.

87.     The '805 Patent is valid and enforceable.

88.     The asserted claims of the '805 Patent comprise at least the following physical components: an optical system with a light source comprising a plurality of semiconductor sources, each configured to be modulated and to generate an output light having one or more optical wavelengths in the near-infrared range between 700 nanometers and 2500 nanometers, with at least a first semiconductor source operating at a first wavelength with lower water absorption and

at least a second semiconductor source operating at a second wavelength with higher water absorption; one or more wavelength selective optical filters placed in front of the light source; a housing configured to receive the output lights and deliver an output to an object, the housing coupled to an electrical circuit and a processor; and a detection system comprising one or more photo-detectors configured to receive at least a portion of the output reflected from the object and to generate an output signal, with the detection system synchronized to the light source. *See* '805 Patent, claim 14. The system including the processor is configured to identify the object based on water absorption by generating and comparing output signals related to reflected light at the first and second wavelengths to generate an output value. *Id*. Thus, the asserted claims of the '805 Patent are each directed to a physical system and are not directed to an abstract idea.

89.     The asserted claims of the '805 Patent further recite the capability of the system to identify an object based on water absorption within the object by generating a first part of the output signal related to output reflected at the first wavelength with lower water absorption, generating a second part of the output signal related to output reflected at the second wavelength with higher water absorption, and comparing the two parts to generate an output value. *Id*. These elements provide for the unique and unconventional application of optical signal processing to generate and compare signals at different wavelengths for object identification based on water content, yielding more accurate and reliable non-invasive detection and identification capabilities.

90.     Certain of the asserted claims of the '805 Patent include additional elements that provide further beneficial enhancements, such as a detection wavelength selective optical filter placed before the detection system and configured to pass at least some of the first wavelength and at least some of the second wavelength with one or more dielectric filters (*see* claim 15), the first wavelength being near 1090 nanometers and the second wavelength being near 1440 nanometers

21

(*see* claim 16), the object comprising skin, tissue or teeth of a user with the processor configured to compare the output value to a threshold (*see* claim 17), the semiconductor sources comprising modulated light-emitting diodes (*see* claim 18), coupling to a wearable device adapted to be placed on a wrist or ear of the user (*see* claim 19), and the semiconductor sources comprising modulated laser diodes with one or more Bragg reflectors (*see* claim 20).

91.     Thus, the asserted claims of the '805 Patent are directed to specific improvements to systems for object identification based on water absorption using optical sensing in the near-infrared range. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based detection, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '805 Patent.

### U.S. Patent No. 12,251,194

92.     On March 18, 2025, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 12,251,194 ("the '194 Patent"), entitled "Time-of-Flight Sensors Co-Registered with Camera Systems." A copy of the '194 Patent is attached hereto as Exhibit G.

93.     Plaintiff is the assignee of all rights, title, and interest in and to the '194 Patent and, at a minimum, of all substantial rights in the '194 Patent, and possesses all rights of recovery, whether legal or equitable, under the '194 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

94.     Plaintiff and any of its predecessors-in-interest have not made, offered for sale, sold, or imported in the United States any products practicing the claims of the '194 Patent.

95.     Plaintiff and any of its predecessors-in-interest have not licensed the '194 Patent to any third party that has made, offered for sale, sold, or imported in the United States any products practicing the claims of the '194 Patent.

96.     Plaintiff is in compliance with all applicable obligations under 35 U.S.C. § 287 and is entitled to collect pre-filing damages for the full period allowed by law for infringement of the '194 Patent.

97.     The '194 Patent is valid and enforceable.

98.     The '194 Patent is related through a chain of continuation applications to U.S. Pat. No. 11,678,805 and discloses and expands upon at least the same inventive solutions to technical challenges associated with remote sensing and non-invasive measurement of physiological parameters.

99.     The asserted claims of the '194 Patent comprise at least the following physical components of a remote sensing system: an array of laser diodes configured to generate light having an initial light intensity and one or more optical wavelengths including at least one near-infrared wavelength between 700 nanometers and 2500 nanometers, the array comprising a plurality of emitters with one or more Bragg reflectors, configured to be modulated with a pulsed output and coupled to driver electronics; a first lens configured to receive at least a portion of the light and direct it to an object; a detection system comprising a photodiode array with at least one second lens and one or more spectral filters, coupled to a processor, with pixels coupled to CMOS transistors, synchronized to the laser diodes and configured to perform a time-of-flight measurement; and a camera imaging system coupled to the detection system. *See* '194 Patent, claims 1, 8. Thus, the asserted claims of the '194 Patent are each directed to a physical system and are not directed to an abstract idea.

23

100.    The asserted claims of the '194 Patent further recite the capability of combining time-of-flight depth information with camera imaging information, including generating images from reflected light beams and combining those images with time-of-flight measurements to create combined data. *See* '194 Patent, claim 8. Certain claims also recite improving the signal-to-noise ratio by increasing light intensity of the array of laser diodes relative to the initial light intensity. *See* '194 Patent, claims 1, 8, 9. These elements provide for the unique and unconventional combination of time-of-flight sensing with camera imaging systems, yielding more accurate and reliable depth and imaging data for remote sensing applications.

101.    Certain of the asserted claims of the '194 Patent include additional elements that provide further beneficial enhancements, such as combining the time-of-flight measurement with one or more images (*see* claim 2), a slit or spatial filter to spatially block at least a part of the light beams (*see* claim 3), spatial compensation for fluctuations (claim 4), coupling to a wearable device, smart phone or tablet with an active illuminator comprising one or more light emitting diodes (*see* claim 5), use of artificial intelligence in making decisions associated with the images or time-of-flight measurement (*see* claim 6), an adjustable lens system (*see* claim 7), combining first and second images from multiple cameras with time-of-flight measurement (*see* claim 8), improving signal-to-noise ratio by increasing light intensity (*see* claim 9).

102.    Thus, the asserted claims of the '194 Patent are directed to specific improvements to systems for remote sensing using time-of-flight sensors co-registered with camera systems, including integration with periscope-type camera imaging systems and multi-camera depth imaging. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based remote sensing, and recite more than generic

computer functionality and elements that were not purely conventional as of the priority date of the '194 Patent.

## KNOWLEDGE OF THE ASSERTED PATENTS

103. Apple has had actual notice of Omni MedSci's patented technology by virtue of direct interactions between Omni MedSci's principal, Dr. Islam, and Apple personnel.

104. Between June 2014 and July 2016, Dr. Islam had a series of meetings and email exchanges with Apple personnel regarding the technology underlying his then-pending patent applications, including the parent applications of now-issued Asserted Patents. In those exchanges, Apple was offered the opportunity to license or acquire Omni MedSci's patented and patent-pending technology, but Apple declined.

105. On June 11–12, 2014, Dr. Islam met with Apple employees Drs. Michael O'Reilly and Michael Hillman in Cupertino, California to discuss Omni MedSci's then patent-pending technology.

106. Dr. Hillman then arranged for a meeting with Dr. Islam and approximately ten Apple employees in Cupertino, California to discuss technical details of Omni MedSci's then patent-pending technology. The meeting took place at Apple on February 5, 2015.

107. On July 14, 2016, Apple employee Greg Joswiak emailed Dr. Islam inviting him to provide additional information about his technology. Mr. Joswiak indicated that he would share the information with his team at Apple.

108. Four days later, Apple employees Drs. Ed Hull and Shonn Hendee arranged a meeting with Dr. Islam and approximately ten Apple employees in Cupertino, California to discuss technical details of Omni MedSci's then patent-pending technology. The meeting took place at Apple on July 18, 2016. At the meeting, Dr. Islam shared the published application for the U.S.

Patent Nos. 9,651,533 and the published patent applications for the U.S. Patent Nos. 9,885,698, 9,757,040, and 9,861,286, which are parent applications to the Asserted Patents.

109.    Dr. Islam continued to correspond with Apple employees regarding the status of his pending patent applications and technological development. On December 21, 2017, Dr. Islam emailed Drs. O'Reilly, Hull, and Hendee identifying issued U.S. Patent Nos. 9,651,533 and 9,757,040, and enclosing copies of allowed claims for the U.S. Patent Nos. 9,861,286 and 9,885,698 patents. In response, Dr. O'Reilly emailed Dr. Islam stating, "We [Apple] don't wish to receive any information about any of your IP [Intellectual Property]." As of December 21, 2017, Apple knew the claim scope of all four of the U.S. Patent Nos. 9,651,533, 9,757,040, 9,861,286, and 9,885,698, which are parent applications to the Asserted Patents.

110.    Based on the foregoing communications and meetings between Dr. Islam and Apple personnel, Apple has known of the scope of Omni MedSci's patent claims and the relevance of Omni MedSci's patented technology to Apple's products since at least 2014.

111.    On April 6, 2018, Omni MedSci filed a complaint against Apple alleging infringement of U.S. Patent Nos. 9,651,533, 9,757,040, 9,861,286, and 9,885,698, which are parent applications to the Asserted Patents. *Omni MedSci, Inc. v. Apple Inc.*, Dkt. 1, No. 2:18-cv-00134 (E.D. Tex. 2018).

112.    On October 15, 2018, Omni MedSci filed a complaint against Apple alleging infringement of U.S. Patent Nos. 10,098,546, 9,861,286, and 9,885,698, which are parent applications to the Asserted Patents. *Omni MedSci, Inc. v. Apple Inc.*, Dkt. 1, No. 2:18-cv-00429 (E.D. Tex. 2018). On January 28, 2019, Omni MedSci filed an amended complaint against Apple additionally alleging infringement of U.S. Patent No. 10,188,299, which is a parent application to

26

the Asserted Patents. *Omni MedSci, Inc. v. Apple Inc.,* Dkt. 42, No. 4:19-cv-05673 (N.D. Cal. 2019).

113.   On January 24, 2020, Omni MedSci filed a complaint against Apple alleging infringement of U.S. Patent No. 10,517,484, which is a parent application to the Asserted Patents. *Omni MedSci, Inc. v. Apple Inc.,* Dkt. 1, No. 4:20-cv-00563 (N.D. Cal. 2020).

114.   On information and belief, Apple has lawyers and other active agents who regularly review patents and published patent applications naming Dr. Islam as an inventor and/or naming Omni MedSci as an assignee. On information and belief, Apple has lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the Asserted Patents. The timing, circumstances, and extent of Defendant obtaining actual knowledge of the Asserted Patents prior to commencement of this lawsuit will be confirmed during discovery.

## THE ACCUSED SYSTEMS

### Apple Watch Products

115.   Apple makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartwatches, including the Apple Watch Series 6 and later, and Apple Watch Ultra and Apple Watch Ultra 2 and later products (collectively, "Apple Watch Products"). The Apple Watch Products include capabilities for measuring one or more physiological parameters of the user, such as heart rate and blood oxygen level, and they are designed and intended for use with an iPhone or iPad. Apple actively markets and supports sales of Apple Watch Products through its websites, Apple retail stores, and other means, and sells these smartwatches to retailers, distributors, and/or other resellers.

116. Apple also provides software applications, such as the Apple Health app, configured to integrate Apple Watch Products for use with iPhones and iPads. Apple also provides a cloud computing platform, such as iCloud, through which it provides cloud computing services involving receiving data signals over wireless transmission links from iPhones and iPads.

117. When the user wears an Apple Watch on their wrist, the watch measures physiological parameters using various hardware components. The Apple Watch Products are also configured to transfer information related to these parameters to an iPhone or iPad running compatible software and capable of transferring associated information to a cloud computing platform such as iCloud. Thus, Apple provides and supports multiple hardware and software components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of an Apple Watch.

### Apple AirPods Products

118. Apple makes, uses, sells, offers for sale, and/or imports into the United States a variety of earbuds, including AirPods 3, AirPods Pro 2, and AirPods Pro 3 (collectively, "Apple AirPods Products"). The Apple AirPods Products include capabilities for measuring one or more physiological parameters of the user, such as heart rate, and include skin sensors. Apple actively markets and supports sales of Apple AirPods Products through its websites, Apple retail stores, and other means.

### Apple iPhone Products

119. Apple makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartphones, including iPhone 12 Pro and later models, iPhone 15 Pro and iPhone 15 Pro Max, and later Pro and Pro Max models (collectively, "Apple iPhone Products"). The Apple

iPhone Products include LiDAR scanners and/or periscope cameras with optical measurement capabilities. Apple actively markets and supports sales of Apple iPhone Products through its websites, Apple retail stores, and other means.

### Apple iPad Products

120.    Apple makes, uses, sells, offers for sale, and/or imports into the United States a variety of tablets, including any model of Apple iPad Pro released in 2020 or later (collectively, "Apple iPad Products"). The Apple iPad Products include LiDAR scanners with optical measurement capabilities. Apple actively markets and supports sales of Apple iPad Products through its websites, Apple retail stores, and other means.

### COUNT I: INFRINGEMENT OF THE '475 PATENT

121.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 120 above.

122.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '475 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing wearable devices that embody the inventions claimed in the '475 Patent, in particular, at least claims 2–4, 9, and 10, within the United States and within this District. Apple has been and is engaged in one or more of these direct infringing activities related to its Apple Watch Products, including Apple Watch Series 9 or later, and Apple Watch Ultra 2 or later products, which include blood oxygen measurement, hypertension notification, and double finger tap features. Apple sells the Apple Watch Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Apple Watch Products are designed to connect to and work in concert with iPhones and iPads through related mobile apps

provided by Apple. Those phones and tablets are operable to connect to a network to communicate with Apple's cloud-based servers. Apple has and continues to market and promote the compatibility between the Apple Watch Products and iPhones and iPads for providing an integrated measurement system, and users need only perform simple steps to connect an Apple Watch with an iPhone or iPad enabled with the Apple Health mobile app and supported by iCloud. On information and belief, Plaintiff further alleges that Apple employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least claims 2–4, 9, and 10 of the '475 Patent in connection with development, testing, and/or demonstration of Apple product systems comprising Apple Watch Products.

123. Notice of the factual bases of Plaintiff's allegations of infringement of the '475 Patent by the Apple Watch Products is provided in the claim chart attached hereto as Exhibit H. The referenced infringement chart is based on Plaintiff's current understanding of the Apple Watch Products based on information publicly available at the time of this filing. The selection of claims and products is exemplary and should not be considered limiting of Apple's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

124. Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '475 Patent, including at least claims 2–4, 9, and 10, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

30

125. Apple's customers and other end-users directly infringe at least claims 2–4, 9, and 10 at least by using infringing Apple Watch devices, which may be integrated with an iPhone or iPad running a compatible health mobile app provided and/or supported by Apple. End-users have used and continue to use the subject matter of claims 2–4, 9, and 10 by placing the Apple Watch into service and exercising control over it and obtaining beneficial use of each element of the claimed device. End-users initiate use of the Apple Watch by placing it on their wrist, which may be wirelessly paired to an iPhone or iPad and synched to a health app on the iPhone or iPad with an associated iCloud account. The end user benefits from each component of the claimed device, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, including pulse rate, blood flow, and hypertension-related parameters. Apple's customers and other end-users also directly infringe at least claims 2–4, 9, and 10 at least by using Apple Watch wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

126. Apple has had knowledge of subject matter of the '475 Patent and the infringement alleged herein based on the communications and meetings between Dr. Islam and Apple personnel, and based on the prior Apple litigations by Plaintiff, as alleged in paragraphs 103–114 above. The timing, circumstances, and extent of Apple obtaining actual knowledge of the '475 Patent prior to commencement of this lawsuit will be confirmed during discovery.

127. Apple actively induces third parties, including customers and end-users, to use infringing devices incorporating Apple Watch Products operating in their normal and customary way and in accordance with their intended functionality and purpose. Apple induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Apple Watch Products, and providing instructions, documentation,

31

and other information to customers and end-users suggesting they use the Apple Watch Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Apple induces direct infringement by such third parties by: (i) selling Apple Watch Products to third parties and providing software designed to integrate such products with iPhone products, iPad products, and/or other compatible Apple devices and services, when such products are designed for use as wearable non-invasive measurement devices that infringe the '475 Patent in their normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '475 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Apple Watch Products are operated such that each element of the patented devices is present in a manner dictated by Apple; (iv) providing cloud-based services and computing platforms designed to provide additional features and functionality to users of Apple Watch Products; (v) providing technical support, information, and instructions for configuring, pairing, operating, and maintaining Apple Watch Products and other Apple Products in their customary way; (vi) advertising and promoting the Apple Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Apple Products, including the physiological measurement features thereof.

128. Upon gaining knowledge of the '475 Patent, it became apparent to Apple that the manufacture, sale, importation, offer for sale, and/or use of the Apple Products infringe the '475 Patent. Despite knowledge of the '475 Patent, Apple continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner that infringes the '475 Patent. Apple performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '475 Patent. Apple directly benefits from and actively and knowingly

32

encourages customers and end-users to use infringing devices in Apple Watch Products. On information and belief, Apple will continue to engage in activities constituting inducement of infringement, with the actual intent to cause acts that it knows or should know would induce direct infringement and/or with willful blindness to a high probability that such activities result in infringement of the '475 Patent.

129. Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers, and/or end users of infringing wearable devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Apple Watch Products and software designed and intended to integrate such devices with iPhone products, iPad products, and other Apple devices networked to and supported by Apple's cloud-based services and computing platforms, knowing that such devices and software are material to the inventions claimed by at least claims 2–4, 9, and 10 of the '475 Patent, are especially made or especially adapted for use in infringing the patented inventions, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

130. Apple's direct and indirect infringement of the '475 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Apple ceases its infringing activities, it will continue to injure Plaintiff.

131. On information and belief, Apple acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Apple should have known about it. Apple continues to infringe the '475 Patent by making, using, selling, offering for sale and/or importing in the United States the Apple Watch Products and by inducing and contributing to the direct infringing use of the claimed

inventions by others, in reckless disregard of Plaintiff's patent rights. Apple continues its infringement notwithstanding actual knowledge of the Asserted Patents (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '475 Patent. Apple's infringement of the '475 Patent, following its knowledge of the Asserted Patents, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## COUNT II: INFRINGEMENT OF THE '787 PATENT

132. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 131 above.

133. Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '787 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing wearable devices that embody the inventions claimed in the '787 Patent, in particular, at least claims 1 and 2–5, within the United States and within this District. Apple has been and is engaged in one or more of these direct infringing activities related to its Apple Watch Products, including Apple Watch Series 6 or later, and any model of Apple Watch Ultra products, which include blood oxygen measurement features. Apple sells the Apple Watch Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Apple Watch Products are designed to connect to and work in concert with iPhones and iPads through related mobile apps provided by Apple. Those phones and tablets are operable to connect to a network to communicate with Apple's cloud-based servers. Apple has and continues to market and promote the compatibility between the Apple

34

Watch Products and iPhones and iPads for providing an integrated measurement system, and users need only perform simple steps to connect an Apple Watch with an iPhone or iPad enabled with the Apple Health mobile app and supported by iCloud. On information and belief, Plaintiff further alleges that Apple employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least claims 1 and 2–5 of the '787 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Apple Watch Products.

134.    Notice of the factual bases of Plaintiff's allegations of infringement of the '787 Patent by the Apple Watch Products is provided in the claim chart attached hereto as Exhibit I. The referenced infringement chart is based on Plaintiff's current understanding of the Apple Watch Products based on information publicly available at the time of this filing. The selection of claims and products is exemplary and should not be considered limiting of Apple's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

135.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '787 Patent, including at least claims 1 and 2–5, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

136.    Apple's customers and other end-users directly infringe at least claims 1 and 2–5 at least by using infringing Apple Watch devices, which may be integrated with an iPhone or iPad running a compatible health mobile app provided and/or supported by Apple. Customers and end

users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 1 and 2–5, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of claims 1 and 2–5 by placing the Apple Watch into service and exercising control over it and obtaining beneficial use of each element of the claimed device. End-users initiate use of the Apple Watch by placing it on their wrist, which may be wirelessly paired to an iPhone or iPad and synched to a health app on the iPhone or iPad with an associated iCloud account. The end user benefits from each component of the claimed device, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, including blood oxygen saturation level. Apple's customers and other end-users also directly infringe at least claims 1 and 2–5 at least by using Apple Watch wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

137.   Apple has had knowledge of subject matter of the '787 Patent and the infringement alleged herein based on the communications and meetings between Dr. Islam and Apple personnel, and based on the prior Apple litigations by Plaintiff, as alleged in paragraphs 103–114 above. The timing, circumstances, and extent of Apple obtaining actual knowledge of the '787 Patent prior to commencement of this lawsuit will be confirmed during discovery.

138.   Apple actively induces third parties, including customers and end-users, to use infringing devices incorporating Apple Watch Products operating in their normal and customary way and in accordance with their intended functionality and purpose. Apple induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or

otherwise making available the Apple Watch Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Apple Watch Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Apple induces direct infringement by such third parties by: (i) selling Apple Watch Products to third parties and providing software designed to integrate such products with iPhone products, iPad products, and/or other compatible Apple devices and services, when such products are designed for use as wearable non-invasive measurement devices that infringe the '787 Patent in their normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '787 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Apple Watch Products are operated such that each element of the patented devices is present in a manner dictated by Apple; (iv) providing cloud-based services and computing platforms designed to provide additional features and functionality to users of Apple Watch Products; (v) providing technical support, information, and instructions for configuring, pairing, operating, and maintaining Apple Watch Products and other Apple Products in their customary way; (vi) advertising and promoting the Apple Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Apple Products, including the physiological measurement features thereof.

139. Upon gaining knowledge of the '787 Patent, it became apparent to Apple that the manufacture, sale, importation, offer for sale, and/or use of the Apple Products infringe the '787 Patent. Despite knowledge of the '787 Patent, Apple continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner that infringes the '787 Patent. Apple performs these acts with the intent, or willful blindness, that the induced

acts directly infringe the '787 Patent. Apple directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in Apple Watch Products. On information and belief, Apple will continue to engage in activities constituting inducement of infringement, with the actual intent to cause acts that it knows or should know would induce direct infringement and/or with willful blindness to a high probability that such activities result in infringement of the '787 Patent.

140.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers, and/or end users of infringing wearable devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Apple Watch Products and software designed and intended to integrate such devices with iPhones and iPads networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1 and 2–5 of the '787 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

141.    Apple's direct and indirect infringement of the '787 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Apple ceases its infringing activities, it will continue to injure Plaintiff.

142.    On information and belief, Apple acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Apple should have known about it. Apple continues to infringe the '787 Patent by making, using, selling, offering for sale and/or importing in the United States the Apple Watch Products and by inducing and contributing to the direct infringing use of the claimed

inventions by others, in reckless disregard of Plaintiff's patent rights. Apple continues its infringement notwithstanding actual knowledge of the Asserted Patents and without a good faith basis to believe that its activities do not infringe any valid claim of the '787 Patent. Apple's infringement of the '787 Patent, following its knowledge of the Asserted Patents, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## COUNT III: INFRINGEMENT OF THE '790 PATENT

143. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 142 above.

144. Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '790 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing optical systems that embody the inventions claimed in the '790 Patent, in particular, at least claims 1 and 2–6, within the United States and within this District. Apple has been and is engaged in one or more of these direct infringing activities related to its Apple Watch Products including Apple Watch Series 9 or later, or Apple Watch Ultra 2 or later, which include tap, finger movement activation, and blood oxygen measurement features, and connections to Apple iPhone/iPad Products, which include Face ID (dToF proximity) features. Apple sells the Apple Watch Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Apple Watch Products are designed to connect to and work in concert with iPhones and iPads through related mobile apps provided by Apple. Those phones and tablets are operable to connect to a network to communicate with Apple's cloud-based servers. Apple has and continues to market and promote the compatibility

39

between the Apple Watch Products and iPhones and iPads for providing an integrated measurement system, and users need only perform simple steps to connect an Apple Watch with an iPhone or iPad enabled with the Apple Health mobile app and supported by iCloud. On information and belief, Plaintiff further alleges that Apple employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least claims 1 and 2–6 of the '790 Patent in connection with development, testing, and/or demonstration of optical systems comprising Apple Watch Products.

145.    Notice of the factual bases of Plaintiff's allegations of infringement of the '790 Patent by the Apple Watch Products is provided in the claim chart attached hereto as Exhibit J. The referenced infringement chart is based on Plaintiff's current understanding of the Apple Watch Products based on information publicly available at the time of this filing. The selection of claims and products is exemplary and should not be considered limiting of Apple's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

146.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '790 Patent, including at least claims 1 and 2–6, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

147.    Apple's customers and other end-users directly infringe at least claims 1 and 2–6 at least by using infringing Apple Watch devices, which may be integrated with an iPhone or iPad running a compatible health mobile app provided and/or supported by Apple. Customers and end

users have made and continue to make infringing optical systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 1 and 2–6, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of claims 1 and 2–6 by placing the optical systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End users initiate use of the system by placing an Apple Watch on their wrist and initiating its various functionalities for measuring physiological parameters, including using tap and finger movement activation features. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements. Apple's customers and other end-users also directly infringe at least claims 1 and 2–6 at least by using Apple Watch wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

148.    Apple has had knowledge of subject matter of the '790 Patent and the infringement alleged herein based on the communications and meetings between Dr. Islam and Apple personnel, and based on the prior Apple litigations by Plaintiff, as alleged in paragraphs 103–114 above. The timing, circumstances, and extent of Apple obtaining actual knowledge of the '790 Patent prior to commencement of this lawsuit will be confirmed during discovery.

149.    Apple actively induces third parties, including customers and end-users, to use infringing Apple Watch Products operating in their normal and customary way and in accordance with their intended functionality and purpose. Apple induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making

41

available the Apple Watch Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Apple Watch Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Apple induces direct infringement by such third parties by: (i) selling Apple Watch Products to third parties and providing software designed to integrate such products with iPhone products, iPad products, and/or other compatible Apple devices and services, when such products are designed for use as wearable non-invasive measurement devices that infringe the '790 Patent in their normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '790 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Apple Watch Products are operated such that each element of the patented devices is present in a manner dictated by Apple; (iv) providing cloud-based services and computing platforms designed to provide additional features and functionality to users of Apple Watch Products; (v) providing technical support, information, and instructions for configuring, pairing, operating, and maintaining Apple Watch Products and other Apple Products in their customary way; (vi) advertising and promoting the Apple Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Apple Products, including the physiological measurement features thereof.

150.    Upon gaining knowledge of the '790 Patent, it became apparent to Apple that the manufacture, sale, importation, offer for sale, and/or use of the Apple Products infringe the '790 Patent. Despite knowledge of the '790 Patent, Apple continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner that infringes the '790 Patent. Apple performs these acts with the intent, or willful blindness, that the induced

42

acts directly infringe the '790 Patent. Apple directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in Apple Watch Products. On information and belief, Apple will continue to engage in activities constituting inducement of infringement, with the actual intent to cause acts that it knows or should know would induce direct infringement and/or with willful blindness to a high probability that such activities result in infringement of the '790 Patent.

151.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers, and/or end users of infringing wearable devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Apple Watch Products and software designed and intended to integrate such devices with iPhones and iPads networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1 and 2–6 of the '790 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

152.    Apple's direct and indirect infringement of the '790 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Apple ceases its infringing activities, it will continue to injure Plaintiff.

153.    On information and belief, Apple acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Apple should have known about it. Apple continues to infringe the '790 Patent by making, using, selling, offering for sale and/or importing in the United States the Apple Watch Products and by inducing and contributing to the direct infringing use of the claimed

inventions by others, in reckless disregard of Plaintiff's patent rights. Apple continues its infringement notwithstanding actual knowledge of the Asserted Patents and without a good faith basis to believe that its activities do not infringe any valid claim of the '790 Patent. Apple's infringement of the '790 Patent, following its knowledge of the Asserted Patents, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

### COUNT IV: INFRINGEMENT OF THE '577 PATENT

154. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 153 above.

155. Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '577 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing optical systems that embody the inventions claimed in the '577 Patent, in particular, at least claims 7 and 8–13, within the United States and within this District. Apple has been and is engaged in one or more of these direct infringing activities related to its Apple Watch Products (e.g., Apple Watch Series 6 or later, or any model of Apple Watch Ultra) and Apple iPhone/iPad Products, which include blood oxygen measurement features and Face ID (dToF proximity) features, and Apple AirPods Products (e.g., AirPods Pro 3), which include heart rate sensor features. Apple sells the Apple Watch Products, Apple AirPods Products, Apple iPhone Products, and Apple iPad Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Apple Watch Products and Apple AirPods Products are designed to connect to and work in concert with iPhones and iPads through related mobile apps provided by Apple. Those phones and tablets are operable to connect to a

network to communicate with Apple's cloud-based servers. Apple has and continues to market and promote the compatibility between the Apple Watch Products, Apple AirPods Products and iPhones and iPads for providing an integrated measurement system, and users need only perform simple steps to connect an Apple Watch and Apple AirPods Products with an iPhone or iPad enabled with the Apple Health and other mobile apps and supported by iCloud. On information and belief, Plaintiff further alleges that Apple employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least claims 7 and 8–13 of the '577 Patent in connection with development, testing, and/or demonstration of optical systems comprising Apple Watch Products, Apple AirPods Products and Apple iPhone/iPad Products.

156.    Notice of the factual bases of Plaintiff's allegations of infringement of the '577 Patent by the Apple Watch Products and Apple iPhone/iPad Products is provided in the claim chart attached hereto as Exhibit K. The referenced infringement chart is based on Plaintiff's current understanding of the Apple Watch Products, Apple AirPods Products and Apple iPhone/iPad Products based on information publicly available at the time of this filing. The selection of claims and products is exemplary and should not be considered limiting of Apple's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

157.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '577 Patent, including at least

claims 7 and 8–13, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

158.    Apple's customers and other end-users directly infringe at least claims 7 and 8–13 at least by using infringing optical systems comprised of Apple Watch devices or Apple AirPods Products integrated with Apple iPhone/iPad Products. Customers and end users have made and continue to make infringing optical systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 7 and 8–13, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of claims 7 and 8–13 by placing the optical systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing an Apple Watch on their wrist/ Apple AirPods in their ears and using an iPhone or iPad with Face ID features in conjunction therewith. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, as well as to utilize time-of-flight imaging capabilities for facial recognition, and other functionalities. Apple's customers and other end-users also directly infringe at least claims 7 and 8–13 at least by using Apple Watch/Apple AirPods wearable device products and Apple iPhone/iPad Products, and distributors and resellers directly infringe those claims by offering for sale and selling such products.

159.    Apple has had knowledge of subject matter of the '577 Patent and the infringement alleged herein based on the communications and meetings between Dr. Islam and Apple personnel, and based on the prior Apple litigations by Plaintiff, as alleged in paragraphs 103–114 above. The

timing, circumstances, and extent of Apple obtaining actual knowledge of the '577 Patent prior to commencement of this lawsuit will be confirmed during discovery.

160. Apple actively induces third parties, including customers and end-users, to use infringing optical systems incorporating Apple Watch Products, Apple AirPods Products and Apple iPhone/iPad Products operating in their normal and customary way and in accordance with their intended functionality and purpose. Apple induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Apple Watch Products, Apple AirPods Products and Apple iPhone/iPad Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use these products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Apple induces direct infringement by such third parties by: (i) selling Apple Watch Products and/or Apple AirPods Products to third parties and providing software designed to integrate such products with iPhone products, iPad products, and/or other compatible Apple devices and services, when such products are designed for use as wearable non-invasive measurement devices that infringe the '577 Patent in their normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '577 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Apple Watch Products/Apple AirPods Products are operated such that each element of the patented devices is present in a manner dictated by Apple; (iv) providing cloud-based services and computing platforms designed to provide additional features and functionality to users of Apple Watch Products/Apple AirPods Products; (v) providing technical support, information, and instructions for configuring, pairing, operating, and maintaining Apple Watch Products/Apple AirPods

47

Products and other Apple Products in their customary way; (vi) advertising and promoting the Apple Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Apple Products, including the physiological measurement features thereof.

161.    Upon gaining knowledge of the '577 Patent, it became apparent to Apple that the manufacture, sale, importation, offer for sale, and/or use of the Apple Products infringe the '577 Patent. Despite knowledge of the '577 Patent, Apple continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner that infringes the '577 Patent. Apple performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '577 Patent. Apple directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in Apple Watch Products/Apple AirPods Products. On information and belief, Apple will continue to engage in activities constituting inducement of infringement, with the actual intent to cause acts that it knows or should know would induce direct infringement and/or with willful blindness to a high probability that such activities result in infringement of the '577 Patent.

162.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers, and/or end users of infringing wearable devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Apple Watch Products/Apple AirPods Products and Apple iPhone/iPad Products and software designed and intended to integrate such devices with one another and with a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 7 and 8– 13 of the '577 Patent, are especially made or especially adapted for use in infringing the patented

systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

163. Apple's direct and indirect infringement of the '577 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Apple ceases its infringing activities, it will continue to injure Plaintiff.

164. On information and belief, Apple acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Apple should have known about it. Apple continues to infringe the '577 Patent by making, using, selling, offering for sale and/or importing in the United States the Apple Watch Products, Apple AirPods Products and Apple iPhone/iPad Products and by inducing and contributing to the direct infringing use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Apple continues its infringement notwithstanding actual knowledge of the Asserted Patents and without a good faith basis to believe that its activities do not infringe any valid claim of the '577 Patent. Apple's infringement of the '577 Patent, following its knowledge of the Asserted Patents, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

**COUNT V: INFRINGEMENT OF THE '346 PATENT**

165. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 164 above.

166. Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '346 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling,

offering to sell, and/or importing optical systems that embody the inventions claimed in the '346 Patent, in particular, at least claims 1, 2–5, 6, and 7–11, within the United States and within this District. Apple has been and is engaged in one or more of these direct infringing activities related to its Apple AirPods Products including AirPods Pro 3, AirPods 3, and AirPods Pro 2 products, which include heart rate sensors and skin sensors. Apple sells the Apple AirPods Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Apple AirPods Products are designed to connect to and work in concert with iPhones and iPads through related mobile apps provided by Apple. Those phones and tablets are operable to connect to a network to communicate with Apple's cloud-based servers. Apple has and continues to market and promote the compatibility between the Apple AirPods Products and iPhones and iPads for providing an integrated measurement system, and users need only perform simple steps to connect the Apple AirPods Products with an iPhone or iPad enabled with the Apple Health and other mobile apps and supported by iCloud. On information and belief, Plaintiff further alleges that Apple employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least claims 1, 2–5, 6, and 7–11 of the '346 Patent in connection with development, testing, and/or demonstration of optical systems comprising Apple AirPods Products.

167.    Notice of the factual bases of Plaintiff's allegations of infringement of the '346 Patent by the Apple AirPods Products is provided in the claim chart attached hereto as Exhibit L. The referenced infringement chart is based on Plaintiff's current understanding of the Apple AirPods Products based on information publicly available at the time of this filing. The selection of claims and products is exemplary and should not be considered limiting of Apple's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's

rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

168.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '346 Patent, including at least claims 1, 2–5, 6, and 7–11, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

169.    Apple's customers and other end-users directly infringe at least claims 1, 2–5, 6, and 7–11 at least by using infringing Apple AirPods Products in their normal and customary way and in accordance with their intended functionality and purpose. End-users have used and continue to use the subject matter of the asserted claims by placing the Apple AirPods Products into service and exercising control over them and obtaining beneficial use of each element of the claimed optical system. End-users initiate use of the Apple AirPods Products by placing the earbuds in their ears, which may be wirelessly paired to an iPhone or iPad and synched to a health app or other apps on the iPhone or iPad with an associated iCloud account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, including heart rate. Apple's customers and other end-users also directly infringe at least claims 1, 2–5, 6, and 7–11 at least by using Apple AirPods Products, and distributors and resellers directly infringe those claims by offering for sale and selling such products.

170.    Apple has had knowledge of subject matter of the '346 Patent and the infringement alleged herein based on the communications and meetings between Dr. Islam and Apple personnel, and based on the prior Apple litigations by Plaintiff, as alleged in paragraphs 103–114 above. The

timing, circumstances, and extent of Apple obtaining actual knowledge of the '346 Patent prior to commencement of this lawsuit will be confirmed during discovery.

171. Apple actively induces third parties, including customers and end-users, to use infringing devices incorporating Apple AirPods Products operating in their normal and customary way and in accordance with their intended functionality and purpose. Apple induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Apple AirPods Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Apple AirPods Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Apple induces direct infringement by such third parties by: (i) selling Apple AirPods Products to third parties and providing software designed to integrate such products with iPhone products, iPad products, and/or other compatible Apple devices and services, when such products are designed for use as wearable non-invasive measurement devices that infringe the '346 Patent in their normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '346 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Apple AirPods Products are operated such that each element of the patented devices is present in a manner dictated by Apple; (iv) providing cloud-based services and computing platforms designed to provide additional features and functionality to users of Apple AirPods Products; (v) providing technical support, information, and instructions for configuring, pairing, operating, and maintaining Apple AirPods Products and other Apple Products in their customary way; (vi) advertising and promoting

the Apple Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Apple Products, including the physiological measurement features thereof.

172.    Upon gaining knowledge of the '346 Patent, it became apparent to Apple that the manufacture, sale, importation, offer for sale, and/or use of the Apple Products infringe the '346 Patent. Despite knowledge of the '346 Patent, Apple continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner that infringes the '346 Patent. Apple performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '346 Patent. Apple directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in Apple AirPods Products. On information and belief, Apple will continue to engage in activities constituting inducement of infringement, with the actual intent to cause acts that it knows or should know would induce direct infringement and/or with willful blindness to a high probability that such activities result in infringement of the '346 Patent.

173.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers, and/or end users of infringing wearable devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Apple AirPods Products and software designed and intended to integrate such devices with iPhones and iPads networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 2–5, 6, and 7–11 of the '346 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

174. Apple's direct and indirect infringement of the '346 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Apple ceases its infringing activities, it will continue to injure Plaintiff.

175. On information and belief, Apple acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Apple should have known about it. Apple continues to infringe the '346 Patent by making, using, selling, offering for sale and/or importing in the United States the Apple AirPods Products and by inducing and contributing to the direct infringing use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Apple continues its infringement notwithstanding actual knowledge of the Asserted Patents and without a good faith basis to believe that its activities do not infringe any valid claim of the '346 Patent. Apple's infringement of the '346 Patent, following its knowledge of the Asserted Patents, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## COUNT VI: INFRINGEMENT OF THE '805 PATENT

176. Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 175 above.

177. Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '805 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing optical systems that embody the inventions claimed in the '805 Patent, in particular, at least claims 14 and 15–20, within the United States and within this District. Apple has been and is engaged in one or more of these direct infringing activities related to its

Apple AirPods Products including AirPods 3, AirPods Pro 2, and AirPods Pro 3 products, which include skin sensors. Apple sells the Apple AirPods Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. On information and belief, Plaintiff further alleges that Apple employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least claims 14 and 15–20 of the '805 Patent in connection with development, testing, and/or demonstration of optical systems comprising Apple AirPods Products.

178.   Notice of the factual bases of Plaintiff's allegations of infringement of the '805 Patent by the Apple AirPods Products is provided in the claim chart attached hereto as Exhibit M. The referenced infringement chart is based on Plaintiff's current understanding of the Apple AirPods Products based on information publicly available at the time of this filing. The selection of claims and products is exemplary and should not be considered limiting of Apple's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

179.   Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '805 Patent, including at least claims 14 and 15–20, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

180.   Apple's customers and other end-users directly infringe at least claims 14 and 15–20 at least by using infringing Apple AirPods Products in their normal and customary way and in accordance with their intended functionality and purpose. End-users have used and continue to use

the subject matter of the asserted claims by placing the Apple AirPods Products into service and exercising control over them and obtaining beneficial use of each element of the claimed optical system. End-users initiate use of the Apple AirPods Products by placing the earbuds in their ears, which may be wirelessly paired to an iPhone or iPad. The end user benefits from each component of the claimed system, including the skin-detect sensors that identify the presence of the user's skin for automatic operation. Apple's customers and other end-users also directly infringe at least claims 14 and 15–20 at least by using Apple AirPods Products, and distributors and resellers directly infringe those claims by offering for sale and selling such products.

181. Apple has had knowledge of subject matter of the '805 Patent and the infringement alleged herein based on the communications and meetings between Dr. Islam and Apple personnel, and based on the prior Apple litigations by Plaintiff, as alleged in paragraphs 103–114 above. The timing, circumstances, and extent of Apple obtaining actual knowledge of the '805 Patent prior to commencement of this lawsuit will be confirmed during discovery.

182. Apple actively induces third parties, including customers and end-users, to use infringing devices incorporating Apple AirPods Products operating in their normal and customary way and in accordance with their intended functionality and purpose. Apple induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Apple AirPods Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Apple AirPods Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Apple induces direct infringement by such third parties by: (i) selling Apple AirPods Products to third parties and providing software designed to integrate such products with iPhone

56

products, iPad products, and/or other compatible Apple devices and services, when such products are designed for use as wearable non-invasive measurement devices that infringe the '805 Patent in their normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '805 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Apple AirPods Products are operated such that each element of the patented devices is present in a manner dictated by Apple; (iv) providing cloud-based services and computing platforms designed to provide additional features and functionality to users of Apple AirPods Products; (v) providing technical support, information, and instructions for configuring, pairing, operating, and maintaining Apple AirPods Products and other Apple Products in their customary way; (vi) advertising and promoting the Apple Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Apple Products, including the physiological measurement features thereof.

183.    Upon gaining knowledge of the '805 Patent, it became apparent to Apple that the manufacture, sale, importation, offer for sale, and/or use of the Apple Products infringe the '805 Patent. Despite knowledge of the '805 Patent, Apple continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner that infringes the '805 Patent. Apple performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '805 Patent. Apple directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in Apple AirPods Products. On information and belief, Apple will continue to engage in activities constituting inducement of infringement, with the actual intent to cause acts that it knows or should know would induce direct infringement and/or with willful blindness to a high probability that such activities result in infringement of the '805 Patent.

184. Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers, and/or end users of infringing wearable devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Apple AirPods Products and software designed and intended to integrate such devices with iPhones and iPads, knowing that such devices and software are material to the inventions claimed by at least claims 14 and 15–20 of the '805 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

185. Apple's direct and indirect infringement of the '805 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Apple ceases its infringing activities, it will continue to injure Plaintiff.

186. On information and belief, Apple acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Apple should have known about it. Apple continues to infringe the '805 Patent by making, using, selling, offering for sale and/or importing in the United States the Apple AirPods Products and by inducing and contributing to the direct infringing use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Apple continues its infringement notwithstanding actual knowledge of the Asserted Patents and without a good faith basis to believe that its activities do not infringe any valid claim of the '805 Patent. Apple's infringement of the '805 Patent, following its knowledge of the Asserted Patents, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

**COUNT VII: INFRINGEMENT OF THE '194 PATENT**

187.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 186 above.

188.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '194 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing remote sensing systems that embody the inventions claimed in the '194 Patent, in particular, at least claims 1, 2–7, 8, and 9, within the United States and within this District. Apple has been and is engaged in one or more of these direct infringing activities related to its Apple iPhone Products including Apple iPhone 15 Pro Max, and later Pro and Pro Max products, which include periscope cameras, multiple cameras, and LiDAR features. Apple sells the Apple iPhone Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. On information and belief, Plaintiff further alleges that Apple employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least claims 1, 2–7, 8, and 9 of the '194 Patent in connection with development, testing, and/or demonstration of remote sensing systems comprising Apple iPhone Products.

189.    Notice of the factual bases of Plaintiff's allegations of infringement of the '194 Patent by the Apple iPhone Products is provided in the claim chart attached hereto as Exhibit N. The referenced infringement chart is based on Plaintiff's current understanding of the Apple iPhone Products based on information publicly available at the time of this filing. The selection of claims and products is exemplary and should not be considered limiting of Apple's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's

rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

190.   Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '194 Patent, including at least claims 1, 2–7, 8, and 9, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

191.   Apple's customers and other end-users directly infringe at least claims 1, 2–7, 8, and 9 at least by using infringing remote sensing systems comprised of Apple iPhone Products incorporating periscope and multiple cameras, and LiDAR scanners. End-users have used and continue to use the subject matter of the asserted claims by placing the remote sensing systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by using the periscope and multiple cameras, and LiDAR scanner features of the Apple iPhone Products, including depth mapping, augmented reality, portrait mode photography, and other functionalities that combine time-of-flight sensing with camera imaging. The end user benefits from each component of the claimed system, which allows the user to capture depth-enhanced images, perform augmented reality applications, and utilize computational photography features that combine time-of-flight measurement data with camera images. Apple's customers and other end-users also directly infringe at least claims 1, 2–7, and 8 at least by using Apple iPhone Products, and distributors and resellers directly infringe those claims by offering for sale and selling such products.

192.   Apple has had knowledge of subject matter of the '194 Patent and the infringement alleged herein based on the communications and meetings between Dr. Islam and Apple personnel,

and based on the prior Apple litigations by Plaintiff, as alleged in paragraphs 103–114 above. The timing, circumstances, and extent of Apple obtaining actual knowledge of the '194 Patent prior to commencement of this lawsuit will be confirmed during discovery.

193.    Apple actively induces third parties, including customers and end-users, to use infringing remote sensing systems incorporating Apple iPhone Products operating in their normal and customary way and in accordance with their intended functionality and purpose. Apple induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Apple iPhone Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use these products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Apple induces direct infringement by such third parties by: (i) selling Apple iPhone Products to third parties and providing software designed to integrate such products with other compatible Apple devices and services, when such products are designed for use as remote sensing systems that infringe the '194 Patent in their normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '194 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the remote sensing features of Apple iPhone Products are operated such that each element of the patented devices is present in a manner dictated by Apple; (iv) providing cloud-based services and computing platforms designed to provide additional features and functionality to users of Apple iPhone Products; (v) providing technical support, information, and instructions for configuring, pairing, operating, and maintaining Apple iPhone Products and other Apple Products in their customary way; (vi) advertising and promoting

the Apple Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Apple Products, including the physiological measurement features thereof.

194.    Upon gaining knowledge of the '194 Patent, it became apparent to Apple that the manufacture, sale, importation, offer for sale, and/or use of the Apple Products infringe the '194 Patent. Despite knowledge of the '194 Patent, Apple continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to use its products in a manner that infringes the '194 Patent. Apple performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '194 Patent. Apple directly benefits from and actively and knowingly encourages customers and end-users to use infringing devices in Apple iPhone Products. On information and belief, Apple will continue to engage in activities constituting inducement of infringement, with the actual intent to cause acts that it knows or should know would induce direct infringement and/or with willful blindness to a high probability that such activities result in infringement of the '194 Patent.

195.    Apple, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers, and/or end users of infringing remote sensing devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Apple iPhone Products incorporating periscope camera, and multiple camera systems, and LiDAR scanners, and software designed and intended to integrate such devices, knowing that such devices are material to the inventions claimed by at least claims 1, 2–7, 8, and 9 of the '194 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

196. Apple's direct and indirect infringement of the '194 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Apple ceases its infringing activities, it will continue to injure Plaintiff.

197. On information and belief, Apple acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Apple should have known about it. Apple continues to infringe the '194 Patent by making, using, selling, offering for sale and/or importing in the United States the Apple iPhone Products and by inducing and contributing to the direct infringing use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Apple continues its infringement notwithstanding actual knowledge of the Asserted Patents and without a good faith basis to believe that its activities do not infringe any valid claim of the '194 Patent. Apple's infringement of the '194 Patent, following its knowledge of the Asserted Patents, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## JURY DEMANDED

198. In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in its favor and against Defendant as follows:

i. finding that Defendant has directly and/or indirectly infringed or are directly and/or indirectly infringing one or more claims of each of the Asserted Patents;

63

ii.    awarding Plaintiff damages in accordance with 35 U.S.C. § 284, or as otherwise permitted by law, including treble damages based on Defendant's willful infringement, and damages for any continued post-verdict infringement;

iii.    awarding Plaintiff pre-judgment and post-judgment interest on the damages award and costs;

iv.    declaring this case exceptional and awarding Plaintiff its reasonable attorney fees in accordance with 35 U.S.C. § 285, or as otherwise permitted by law;

v.    a permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with any of them from infringing or inducing or contributing to the infringement of the Asserted Patents without additional compensation to Plaintiff in an amount to be determined by the Court; and

vi.    awarding all such other costs and further relief the Court determines to be just and equitable.

Dated: June 8, 2026

*/s/  Daniel  S.  Stringfield  with  permission*
*William E. Davis, III*
William E. Davis III
Texas Bar No. 24047416
bdavis@davisfirm.com
Ty Wilson
Texas Bar No. 24106583
twilson@davisfirm.com
**DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
Tel: (903) 230-9090
Fax: (903) 230-9661

Daniel S. Stringfield
(*pro hac vice* forthcoming)
Illinois Bar No. 6293893
dstringfield@nixonpeabody.com
**NIXON PEABODY LLP**
70 West Madison
Suite 5200
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405

Elizabeth M. Chiaviello
Texas Bar No. 24088913
D.C. Bar No. 90033239
echiaviello@nixonpeabody.com
Hang Zheng (*pro hac vice* forthcoming)
D.C. Bar No. 241114
Massachusetts Bar No. 690413
hzheng@nixonpeabody.com
**NIXON PEABODY LLP**
799 9th Street NW
Suite 500
Washington, D.C. 20001
Tel: (202) 585-8000
Fax: (202) 585-8080

***Attorneys for Plaintiff Omni MedSci, Inc.***